IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

LAVON LEWIS                                                                                              PLAINTIFF
ADC #154988

v.                                         2:23-cv-00127-BSM-JJV

CHRIS JOHNSON,
Deputy Warden, EARU, ADC; *et al.*                                                        DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

I.   **INTRODUCTION**

Lavon Lewis ("Plaintiff") is a prisoner in the Grimes Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Complaint and Supplemental Complaint, pursuant to 42 U.S.C. § 1983, alleging that while he was in the East Arkansas Regional Unit ("EARU") on January 17, 2023, Defendants Sergeant Franklin Graham, Deputy Warden Chris Johnson, and Corporal Ruben Robinson violated his Eighth Amendment rights by using excessive force against him and failing to protect him from that improper use of force. (Docs. 2, 13.) Plaintiff seeks monetary damages and injunctive relief from Defendants in both their individual and official

capacities.

Defendants have filed a Motion for Summary Judgment arguing Plaintiff failed to properly exhaust his administrative remedies as to some of his claims, and that they are entitled to sovereign and qualified immunity as to the remainder. (Docs. 45-47.) Plaintiff has not filed a Response, and the time to do so has expired. *See* Local Rule 7.2(b) (response to a motion is due fourteen days after service. Thus, the facts in Defendants' Statement of Undisputed Facts (Doc. 47)are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001). After careful review and consideration, I recommend the Motion be GRANTED, Plaintiff's claim against Defendant Robinson be DISMISSED without prejudice, Plaintiff's claims against Defendants Graham and Johnson be DISMISSED with prejudice, and this case be CLOSED.

## II.     SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,*

76 F.4th 753, 757 (8th Cir. 2023).

### III. ADMITTED FACTS

On January 17, 2023, Sergeant Graham and Corporal Robinson came to Isolation 1 in the EARU to move Plaintiff from a hall cage to a cell in Isolation 3. (Doc. 47 at ¶ 33-50, 62.) The officers handcuffed Plaintiff behind his back prior to his removal from the cage. As the group approached the door to leave Isolation 1, Corporal Robinson gave Plaintiff a lawful order to stop so he could put on his leg restraints. Plaintiff resisted because some time ago he had surgery on his ankle. But Plaintiff did not have a "no leg cuff" restriction at that time. Corporal Robinson then gave Plaintiff several direct orders to stop resisting. But Plaintiff refused and became combative. At that point, Corporal Robinson used the least amount of force necessary to bring Plaintiff to the ground and regain control of the situation. Deputy Warden Johnson, who was observing from a nearby office, came to the area and assisted. While Plaintiff was on the ground, he threatened and cursed the officers. After receiving several direct orders to stop, Plaintiff complied, the leg restraints were fastened, the officers helped him stand, and they escorted him to Isolation 3. Although Plaintiff stumbled one time during the walk and fell to his knees, the transition was otherwise unremarkable. And at no time did Sergeant Graham or any of the Defendants punch Plaintiff in the face or use additional force against him.

Later that day, a prison medical provider examined Plaintiff and recorded that he had an abrasion on his lower right leg, abrasions on both wrists, and a scratch on the right side of his back. (*Id*. at ¶ 61-61.) Although Plaintiff reported being hit on the side of his face, there was no swelling, redness, or bruising noted there. Sometime thereafter, Internal Affairs investigated the incident and found proper force was used. (Doc. 48 at 2-8.)

## IV.     EXHAUSTION

### A.     The PLRA & ADC's Grievance Procedure

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Thus, prisoners must exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process before filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion" a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility when doing so. *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The ADC's grievance procedure during the relevant time period was Administrative Directive 19-34, which establishes a three-step procedure. (Doc. 47-1, 47-2.) First, the inmate must attempt informal resolution by filing a Unit Level Grievance Form that includes "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (Doc. 47-1 at § IV(E)(2).) Second, if informal resolution is unsuccessful or there is not a timely response, the inmate must file a formal grievance with the Warden by completing a section on the same form. (*Id.* § IV(E)(11) and (F)(1).) Third, an inmate who is dissatisfied with the response or lack of timely response, must appeal to the ADC Deputy Director, which is the final step in the process. (*Id.* § IV(F)(9) and (G)(6).)

B.   Grievance EAM-23-237

Grievance EAM-23-237, which is the only grievance Plaintiff filed about the incident, Plaintiff said:

> On 1-17-23 at approx. 6:51 am <u>Sgt. Gram</u> with <u>c/o Robinson</u> and <u>Deputy Warden Johnson</u> escorted me from the hallway cage to Isolation 3. In the process of me being escorted from the hog caged which I was in for 24 hours I was being handled ruffly and <u>Sgt. Gram assault me</u> with his closed fist also which had keys in it and <u>Deputy Warden Johnson</u> who was present <u>allowed this to happen</u> as well as used profanity towards me in a unprofessional manner and this is a violation of AR code 225 and also a violation of my 8th right to be free from cruel an unusual punishment. This has cause a significant harm and physical harm to me as well as physical injury to me and also my 14th amendment due process. I would like for this to be addressed and <u>both individuals</u> to be placed on the stress-test for these actions.

(Doc. 47-2 at 8) (emphasis added).   The Warden responded as follows:

> <u>Deputy Warden Johnson</u> and <u>Sergeant Graham</u> both deny your allegations that they violated any of your rights or any of the policies of the Arkansas Department of Corrections.   They both stated that you were being combative and refused to follow orders.  In addition, Sergeant Graham stated that he used the appropriate amount of force that was necessary to gain control.   However, this incident was forwarded to the Internal Affairs Division for a thorough investigation, and you will be notified of their findings.   Therefore, your grievance is found to be without merit.

(*Id*. at 9) (emphasis added.)   On appeal, Plaintiff said:

> Thier's merit to my grievance which would have been seen with review of the camera.   I was told to stop by Iso 2 door.   I complied. <u>Sgt. Graham</u> placed restraints on my right ankle as he was putting it on I said yall on the boage (sic) forcing me to a cell w/o a sleeping bag.   He raised up <u>slammed me against the cage</u> and started <u>yanking on my ankle</u> I had surgery on.   I was already against the cage all Sgt. Gram had to do is place the restraint on my ankle but he kept yanking it attempting to slam me on my face. <u>Deputy Warden Johnson</u> came out <u>knocked me off the cage slamming me on my face</u>.   Review camera.   Once they picked me up, they walked me to Iso 3.   Once I got to the bull pen Sgt. Grham had keys in a closed fist and struck me in the face.   I was not being combative. I don't think there are cameras in the bullpen that's why I'm requesting a voice stress analysis to validate this case of excessive force and place cameras in the bullpens.   <u>Deputy Warden Johnson</u> <u>watched</u> Sgt. Graham and made no attempt to reprimand him.

(*Id*.) (emphasis added.)    The ADC Deputy Warden denied the appeal because an Internal Affairs

Investigation found no merit to Plaintiff's allegations.  (*Id*. at 11.)

Corporal Robinson says he is entitled to dismissal because Plaintiff did not exhaust any claims against him in EAM-23-237.  And I agree.  Although Plaintiff named Corporal Robinson, he did not accuse him of any wrongdoing in the grievance or appeal.  Because he did not do so, Plaintiff failed to comply with the ADC's exhaustion policy and provide prison officials with the first opportunity to investigate any claims against Corporal Robinson.  *See Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (no exhaustion when a prisoner's grievance did not contain "the specific factual allegations that would later appear in his federal complaint"); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when the "ADC was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit); *Champion v. Akins*, Case No. 12-2467, 2013 WL 656797 (8th Cir. Feb. 24, 2013) (improper exhaustion when a prisoner named prison officials in a grievance but did not alleged they did anything wrong).  And, Plaintiff has not raised any argument or facts suggesting administrative remedies were unavailable to him to properly exhaust that claim.  *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust only "available" administrative remedies); *Ross v. Blake*, 578 U.S. 632, 644 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").  Thus, I recommend Plaintiff's claim against Defendant Robinson be dismissed without prejudice.  *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378, (8th Cir. Aug. 19, 2010) (a trial court cannot address the merits of an unexhausted claim).

Next, Sergeant Graham says Plaintiff only exhausted a claim that he used excessive force

by punching him with his fist holding keys. And Sergeant Johnson says Plaintiff only exhausted a claim that he failed to protect him from that improper use of force. But those arguments overlook the fact that, in his appeal, Plaintiff said Sergeant Graham "slammed me against the cage" and "yank[ed] on my ankle." And he claimed Deputy Warden "knocked me off the cage slamming me on my face." Importantly, it is clear from the provided Internal Affairs materials, that ADC officials investigated the entire incident. (Doc. 48.) Thus, I conclude Plaintiff has properly exhausted an excessive force claim against both Defendants Graham and Johnson (regarding what allegedly happened in Isolation 1 and the bull pen area in Isolation 3), as well as a failure to protect claim against Defendant Johnson. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits").

## V.  SOVEREIGN IMMUNITY

Defendants say they are entitled to dismissal of the claims raised against them in their official capacities. I agree in part. The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). The parties agree Defendants are state officials. And the State of Arkansas has not waived its Eleventh Amendment immunity. *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991). Thus, Defendants Johnson and Graham are entitled to sovereign immunity from Plaintiff's request for monetary damages against them in their official capacities.

In contrast, sovereign immunity does not bar Plaintiff's request for injunctive relief or his request for monetary damages from Defendants in their personal capacities. *See Hamner v.*

*Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019); *Mead v. Palmer*, 794 F.3d 932, 937 (8th Cir. 2015). But for the reasons explained in this Recommendation, I conclude Defendants are entitled to judgment as a matter of law on all remaining claims.

## VI. QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity from the claims raised against them in their official capacities. Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019). Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to the plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).

### A. Excessive Force Claims

Because Plaintiff was a convicted prisoner, his excessive force claims fall under the Eighth Amendment. *Graham v. Connor,* 490 U.S. 386, 394 (1989). To defeat qualified immunity and proceed to trial on that claim, there must be evidence suggesting Defendants Graham and Johnson used force "maliciously and sadistically to cause harm" rather than in "a good-faith effort to maintain or restore discipline." *See Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010); *Fisherman v. Launderville,* No. 23-1869, __ F.4th __, *2 (8th Cir. May 6, 2024) (to be published); *Jackson v.*

8

*Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The relevant factors that must be considered when making this determination are: (1) the objective need for force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by Defendants; (4) any efforts by Defendants to temper the severity of the forceful response; and (5) the extent of Plaintiff's injuries. *Id.*

Based on the deemed admitted facts, Defendants Graham and Johnson used the least amount of force necessary to regain control of a prisoner who was disobeying direct orders and resisting having restraints put on his legs so that he could be transported to another area of the prison, which is not an Eighth Amendment violation. *See Peterson v. Heinen*, 89 F.4th 628, 636 (8th Cir. 2023) (granting qualified immunity when officers held down a resisting prisoner for a short time so that they could restrain him); *Burns,* 752 F.3d at 1140 (granting qualified immunity when there was no "specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive"). Thus, I conclude Defendants Graham and Johnson are entitled to qualified immunity, and I recommend the excessive force claims raised against them be dismissed with prejudice.

    **B.**    **Failure to Protect Claim**

To overcome qualified immunity and proceed to trial on a failure to protect claim, there must be evidence: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, Deputy Warden Johnson knew of and deliberately disregarded that substantial risk of serious harm. *See Hodges v. Dept. of Corr.*, 61 F.4th 588, 592 (8th Cir. 2023); *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). Officers have a constitutional duty to stop another officer from using excessive force on an individual. *Smith v. Conway Cnty., Ark.*, 759 F.3d 853, 861 (8th Cir. 2014);

9

*Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009). However, based on the admitted facts, there was no excessive use of force. Thus, Plaintiff's failure to protect claim against Defendant Johnson fails as a matter of law. *Peterson,* 89 F.4th 628 (8th Cir. 2023) ("Without an underlying constitutional violation, there can be no liability for failure to intervene"). Accordingly, I conclude Defendant Johnson is entitled to qualified immunity, and I recommend the failure to protect claim raised against him be dismissed with prejudice.

### VII. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 45) be GRANTED.

2. Plaintiff's failure to protect claim against Defendant Robinson be DISMISSED without prejudice due to a lack of exhaustion.

3. Plaintiff's excessive force and failure to protect claims against Defendants Graham and Johnson be DISMISSED with prejudice, and this case be CLOSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 17th day of May 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE